**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 17-222 |
| | ) | Judge Nora Barry Fischer |
| | ) | |
| DAVID ANTHONY SOMERVILLE, and | ) | |
| NATEL DEQUE WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

In this case, Defendants David Somerville and Natel Walker are each charged with one count of conspiracy to distribute heroin and fentanyl, in violation of 21 U.S.C. § 846 and one substantive count of possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (Docket No. 44).  The charges arise from the seizure of heroin and fentanyl after a traffic stop which took place on January 9, 2016 in Robinson Township at which time Walker was the driver and Somerville was his passenger.  Presently before the Court are motions to suppress evidence filed by each of the Defendants and the Government's opposition thereto.  (Docket Nos. 71; 76-77; 79).  The Court initially held oral argument on the Government's objection to convening a suppression hearing on August 10, 2018, (Docket Nos. 104; 106), and after overruling the Government's objection, (Docket No. 112), held a suppression hearing on December 11, 2018, (Docket Nos. 122; 128).  At the Court's direction, the parties submitted post-hearing proposed findings of fact and conclusions of law, but declined to file responses by the Court's deadline of February 25, 2019.  (Docket Nos. 133; 136; 138).  After careful consideration of all of the parties' filings and the credible evidence of record, and for the following reasons, Defendants' Motions to Suppress are denied.

## II. BACKGROUND

### A. *Factual Findings*

As noted, both Defendants are charged with one count of conspiracy to distribute heroin and fentanyl, in violation of 21 U.S.C. § 846, from September 11, 2015 to on or about January 9, 2016 and one substantive count of possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), on or about January 9, 2016. (Docket No. 44). Both were initially charged with offenses arising from this incident in state court but those charges were *nolle prossed* in favor of this federal prosecution.

At the hearing, the Government presented a series of exhibits, (Govt. Exs. 1-8), and the testimony of Robinson Township Police Department Officer Scott Patton. (Docket Nos. 122; 122-1; 128). Defendants did not call any witnesses nor admit any exhibits but conducted thorough cross-examination of the Government's witness. (*See id*.). In this Court's estimation, based on his demeanor and testimony in response to the questioning of the attorneys and the Court at the suppression hearing, Officer Patton provided credible testimony as to the events in question, despite efforts at impeachment. *See United States v. Garcia*, 521 F. App'x 71, 73 (3d Cir. 2013) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)) ("'[w]hen findings are based on determinations regarding the credibility of witnesses ... for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'"). He also presented as an experienced law enforcement officer.

To this end, Officer Patton has approximately 11 years of experience in law enforcement. (Docket No. 128 at 5). After starting his career working in part-time positions with two police departments, i.e. the Coraopolis Police Department and the Ambridge Police Department, where

2

he worked a combined total of 50 hours per week, Officer Patton joined the Robinson Township Police Department as a full-time patrol officer in 2010. (*Id*. at 5-6, 51-52). He obtained the rank of Sergeant in June of 2018 after the incident in question and currently supervises 8 other officers. (*Id*. at 51-52).

On the early morning hours of January 9, 2016, Officer Patton was on a routine traffic patrol in Robinson Township and was positioned in the lower Route 60, Steubenville Pike area, near Thornburg Bridge. (Docket No. 128 at 6, 52). He described this location as a high drug use and crime area that served as a "back way" into the City of Pittsburgh which was often used by individuals traveling to the City to buy and use drugs because they were cheaper than those sold in surrounding areas and states. (*Id*. at 6, 13, 33). The area also experienced numerous DUI cases at that time of night. (*Id*. at 33). Officer Patton testified that the low-priced hotels in this area were notorious for drug trafficking, prostitution and wanted criminals and that the gas stations in the area had been robbed in the past. (*Id*. at 33).

At approximately 1:28 a.m., Officer Patton observed a Blue Ford Expedition with loud exhaust and a burnt-out taillight traveling westbound on Steubenville Pike moving from the City of Pittsburgh toward the low-priced hotels. (Docket No. 128 at 6-7, 9, 53-54, 67, 78-79). He pulled behind the vehicle and observed that it had a January of 2016 registration sticker but ran the plate and learned that the vehicle's registration had actually expired on December 31, 2015. (*Id*. at 9, 11, 56, 79). It was also reported to him that the vehicle was registered to Charlotte Windsor at an address on Dinwiddie Street in Pittsburgh. (*Id*. at 11). Given the taillight and registration violations, Officer Patton decided to initiate a traffic stop and informed dispatch that he was going to stop the vehicle at a nearby GetGo gas station. (*Id*. at 8; Govt. Ex. 6).

Officer Patton proceeded to pull the vehicle over at the gas station near the gas pumps. (Docket No. 128 at 12).  A back-up unit driven by Sergeant Joel Hamilton quickly arrived on scene.  (*Id*. at 39, 55).  Both Patton and Hamilton exited their vehicles and approached the Ford Expedition, with Patton walking toward the driver's side door and Hamilton toward the passenger's side door. (*Id*. at 39-40).  Officer Patton testified that he noticed a faint smell of burnt marijuana coming from the vehicle as he approached, (*id*. at 12, 36, 57-59), although he had written in his earlier Incident Report that he smelled the marijuana "while speaking" to the occupants of the car. (Docket No. 138-1 at 4).

Officer Patton spoke to the driver of the vehicle, Walker, whom he described as nervous, and he (Walker) admitted that he did not have a driver's license.  (*Id*. at 12).  Officer Patton also observed that Walker was breathing heavily, looking around, shuffling around, and stated that the vehicle belonged to the passenger, Somerville.  (*Id*. at 12-13; 60).  Walker told the officer that they were headed up the hill, which Officer Patton understood to be in the general direction of the low-cost hotels.  (*Id*. at 13).  Officer Patton testified that he believed that Walker was attempting to distance himself from the vehicle.  (*Id*. at 61).  He also saw a baggy corner[1] in the center console of the vehicle which, based on his experience, he knew is commonly used to store drugs, along with rolling papers of the type typically used to roll marijuana joints.  (*Id*. at 15-16, 42, 62, 79).  From these observations, Officer Patton concluded that the occupants of the vehicle had likely smoked marijuana in the car prior to being pulled over and he suspected that Walker was driving under the influence of marijuana.  (*Id*. at 62, 79).  Officer Patton asked Walker to exit the vehicle and subjected him to a pat-down search, which resulted in the seizure of two cell phones but no other contraband or money.  (*Id*. at 17, 68-69).

---

[1]     The Court accepts Officer Patton's correction of his testimony during cross-examination that he saw only a single baggy corner in the console area.  (Docket No. 128 at 63-66).

Sergeant Hamilton spoke to the passenger, Somerville, and the officers were advised by dispatch that he also did not have a valid driver's license and that there was an active warrant for his arrest. (Docket No. 128 at 19, 45). Somerville attempted to explain that he was on federal probation but that he did not have an outstanding arrest warrant. (*Id*. at 19-20). However, he was directed to exit the vehicle, subject to a pat-down search for officer safety, and placed in handcuffs immediately upon receiving information that he was wanted. (*Id*.). The search of Somerville's person resulted in the seizure of $1,200 in cash and three cell phones but no other contraband. (*Id*. at 21, 67). The officers also received an NCIC Wanted Person Response which noted that Somerville had a federal firearm conviction but stated "Warning: do no arrest based on this information." (*Id*. at 20-21). The officers attempted to contact the phone number listed on the form several times and after these attempts were unsuccessful, Somerville was released from the handcuffs. (*Id*.).

The officers requested that a K-9 unit be sent to the scene but that unit initially went to a different GetGo gas station and was re-routed by dispatch to the correct location at 1:44 a.m. (*Id*. at 22). The officers informed the defendants that the drug dog was coming and both agreed verbally to a search of the vehicle and then signed the Robinson Township Voluntary Consent to Search Form at 1:46 a.m. (*Id*. at 23). The form expressly authorizes the search of the vehicle and both agreed that "I am not unduly under the influence of drugs and/or alcohol" and "I am giving this written permission voluntarily and without threats, pressures, coercion or promises of any kind being made." (*Id*.). Officer Patton testified that at the time they received consent to search, neither of the Defendants were handcuffed; they were not threatened; and no officer had drawn a firearm. (*Id*. at 24-26). From his perspective, it was a professional encounter. (*Id*.). No evidence was introduced by the defense to counter these assertions.

The K-9 unit arrived on scene at 1:51 a.m. (Docket No. 128 at 22). The canine sniff resulted in "hits" on the outside of the vehicle, underneath the back of the vehicle and on the driver's side. (*Id*. at 26-27). Officer Patton stated that if the Defendants had not consented to the search, they would have sought a search warrant at this point. (*Id*. at 26). The dog entered the vehicle and "hit" on the center cup holder area and the footboard, near the gas pedal. (*Id*. at 27). The canine sniff took approximately 4-5 minutes. (*Id*. at 28). The officers then proceeded to search the vehicle, locating "roaches" or the remnants of marijuana joints in the center cup holder area along with the baggy corner and rolling papers. (*Id*. at 27). Officer Patton observed that the baggy corner contained apparent marijuana residue. (*Id*. at 67). He then pulled the carpet back near the footboard area on the driver's side and eight bundles of heroin fell to the ground. (*Id*. at 27). Additional heroin was located in the same general area on the passenger's side of the vehicle. (*Id*. at 27-28). The heroin was found approximately 9 minutes after the K-9 unit arrived on scene. (*Id*. at 28). Both Defendants were arrested after the heroin was found and placed in the back of a police cruiser. (*Id*. at 28-29). The officers waited for the tow truck and transported Defendants at approximately 2:39 a.m. (*Id*. at 28-29).

The officers later applied for and received search warrants as to the vehicle and Defendants' cell phones. (*Id*. at 29). During the search of the vehicle, an additional 2 bundles of heroin were located on the passenger-side footboard area. (*Id*. at 29).

### B. *Relevant Procedural History*

After receiving several extensions of time to file pretrial motions, which were granted by the Court, Somerville filed pretrial motions including his motion to suppress on February 12, 2018, and Walker did the same along with supporting briefs on March 13, 2018. (Docket Nos. 68, 69, 70, 71, 74, 75, 76, 77). The Court set the matter for a suppression hearing on May 10,

2018.   (Docket No. 78).   The Government filed its Response on April 12, 2018 and an exhibit list on April 13, 2018.   (Docket Nos. 79, 80).

Walker's former counsel, Stephen Begler, Esq., filed a motion to withdraw on May 1, 2018 which caused the Court to convert the hearing into a status conference.   (Docket Nos. 81-83).   At that conference, the Court granted Mr. Begler's motion to withdraw and current counsel to Walker, Marvin Miller, Esq. was appointed on May 17, 2018.   (Docket Nos. 85-86).   At a subsequent status conference on May 25, 2018, the Court granted an oral motion for an extension of time to file additional pretrial motions by July 24, 2018.   (Docket Nos. 91-92).   Two additional pretrial motions were filed on July 24, 2018, (Docket Nos. 95-96), and the Government filed responses to same on August 3, 2018, (Docket Nos. 101-102).

The Court reset the matter for a suppression hearing on August 10, 2018 but after hearing oral argument from the parties on the Government's objection based on an alleged lack of standing by the Defendants, the Court postponed the hearing and established a briefing schedule.   (Docket Nos. 104-106).   The Court accepted supplemental briefs from the parties and then issued an Order on October 15, 2018, deferring any ruling on the standing objection until after the suppression hearing, to the extent necessary.   (Docket No. 112).

The Court held the suppression hearing on December 11, 2018, ordered production of the transcript and established a briefing schedule for parties to file proposed findings of fact and conclusions of law and responses to same.   (Docket Nos. 122; 128).   The official transcript was filed on January 11, 2019.   (Docket No. 128).   The parties filed their proposed findings of fact and conclusions of law on the following dates: the Government on January 29, 2019, (Docket No. 133); Somerville on February 11, 2019; (Docket No. 136); and, after receiving an extension, Walker on February 18, 2019.   (Docket Nos. 132; 133).   The parties declined to file responses by

the Court's deadline of February 25, 2019. (*See* Docket No. 124). The present motions are thus fully briefed and ripe for disposition.

## III. LEGAL STANDARD

It is well-settled that, at a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (citations omitted).

## IV. DISCUSSION

In their post-hearing submissions of proposed findings of fact and conclusions of law, both Defendants concede that the traffic stop was lawful but contest the constitutionality of the warrantless searches of their persons and the vehicle and the resulting seizures of heroin, cell phones, cash, marijuana roaches, a baggy corner and rolling papers. (Docket Nos. 136; 138). They also challenge the search warrants authorizing the searches of certain cell phones. (*Id.*). Somerville further raises a cursory challenge to alleged custodial statements he made to the officers during the traffic stop. (Docket No. 136). The Government maintains that the evidence of record demonstrates that the searches were authorized under several well-established exceptions to the warrant requirement; that the search warrant as to Somerville's cell phones was supported by probable cause; and that Somerville has failed to demonstrate that he was in custody at the time the alleged statements were made.[2] (Docket No. 133). After careful consideration of the parties' arguments in light of the credible evidence of record, the Court

---

[2] The Court notes that the Government's proposed findings of fact and conclusions of law do not address its previously raised objections to the Defendants' standing to bring the present motions. (Docket No. 133). For the reasons set forth in the body of this Memorandum Opinion, the Court finds that that the searches and seizures were justified under the prevailing law such that the Defendants' motions to suppress are denied. Hence, the Court declines to further discuss the objection to standing, as any such ruling is unnecessary to the disposition of the pending motions.

agrees with the Government that the warrantless searches and seizures were justified under the totality of the circumstances; that the search warrant was supported by probable cause; and that Somerville has failed to establish a *Miranda* violation.

A. *Warrantless Searches*

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. Amend. IV.; *see also United States v. Ubiles*, 224 F.3d 213, 216 (3d Cir. 2000). Warrantless searches are per se unreasonable subject only to a few specifically established and well delineated exceptions. *Horton v. California*, 496 U.S. 128, 133 (1990). Because no warrant authorized the initial searches here, the burden is on the Government to prove by a preponderance of the evidence that the searches fell within one of the recognized exceptions to the warrant requirement. *United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992). The Government invokes several of those exceptions, i.e., the *Terry* patdown search; the automobile exception; and a consent search.[3] (Docket Nos. 79; 133). A *Terry* patdown search is generally authorized after a lawful traffic stop if there is reasonable suspicion of criminal activity by the vehicle's occupants. *See United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012). The consent exception generally authorizes a warrantless search if the subject knowingly and voluntarily consents to a search of the vehicle. *See United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003). "The automobile exception permits vehicle searches without a warrant if there is 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Donahue*, 764 F.3d 293, 299-300 (3d Cir. 2014) (citations omitted). Any evidence obtained

---

[3] The Court notes that the Government also states in its proposed findings of fact and conclusions of law that the search was valid as an inventory search but has not cited caselaw in that submission or its other brief or more fully developed such argument. (*See* Docket No. 133). The Court recognizes that an inventory search conducted pursuant to standardized police procedures is authorized if it is made for the purpose of cataloguing and safeguarding the vehicle's contents. *See United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010). However, as the Court finds that the searches were authorized under several alternative bases, it need not specifically address this position.

pursuant to a search that does not meet a recognized exception to the warrant requirement must be suppressed as "fruit of the poisonous tree." *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

The Court first considers the Defendants' challenges to the *Terry* patdown searches and will then continue to evaluate the other exceptions invoked by the Government here. As this Court previously recognized:

> [u]pon making a lawful traffic stop of a vehicle, police officers are granted the authority "to detain the automobile and its occupants pending an inquiry into a vehicular violation." [*Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009)]. The officers then "may exercise reasonable superintendence over the car and its passengers," and have the discretion to either: (1) order the driver and passengers to get out of the vehicle; or (2) remain in the vehicle while the officers investigate the violation. [*United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004)] (citations omitted). The officers may also execute a *Terry* patdown search for weapons of any occupants of the vehicle upon reasonable suspicion that the occupant is armed and dangerous. *Johnson*, 555 U.S. at 326.

*United States v. Edmonds*, Crim. No. 12-70, 2013 WL 6002234, at *8 (W.D. Pa. Nov. 12, 2013).

Similarly, "[o]nce a valid traffic stop is initiated, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quotation and citation omitted).

> Reasonable suspicion, while not rigidly defined, may be the result of the following factors: "specialized knowledge and investigative inferences," "personal observation of suspicious behavior," "information from sources that prove to be reliable, and information from sources that-while unknown to the police-prove by the accuracy and intimacy of the information provided to be reliable at least as to the details contained within that tip." *Brown*, 448 F.3d at 247 (citation omitted). Depending upon the totality of the circumstances, reasonable suspicion may be the result of one or a combination of the above and other relevant factors. *Id.*

In evaluating the officer's actions, the Court must defer to the "officer's knowledge of the nature and nuances of the type of criminal activity the officer has observed." *United States v. Robertson*, 305 F.3d 164, 166 (3d Cir. 2002) (citing *United States v. Nelson*, 284 F.3d 472 (3d Cir. 2002)). In addition, the United States Court of Appeals for the Third Circuit gives considerable deference to police officers' determinations of reasonable suspicion. *See, e.g., Nelson*, 284 F.3d at 482. Similarly, courts often defer to personal observations and conclusions on the theory that experienced officers can infer criminal activity from conduct that may seem innocuous to a lay person. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also* [*Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)].

The Third Circuit has applied the so-called " 'collective knowledge doctrine'—under which the knowledge of one law enforcement officer is imputed to the officer who actually conducted the seizure, search, or arrest," *United States v. Whitfield*, 634 F.3d 741, 745 (3d Cir. 2010), in various circumstances, including reasonable suspicion to conduct a *Terry* stop and frisk, *id.*; probable cause for a warrantless arrest, *see United States v. Belle*, 593 F.2d 487, 497, n.15 (3d Cir. 1979); and, seizures under the plain view doctrine, *see United States v. Menon*, 24 F.3d 550, 562 (3d Cir. 1994). The collective knowledge doctrine allows officers "'to act on the strength' of work done by fellow officers" when they are engaged in joint law enforcement activities. *United States v. Gonzalez*, 630 F. App'x. 157, 161 (3d Cir. 2015) (quoting *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)). "Under the rule, determinations concerning the existence of reasonable suspicion can be made based on the knowledge of the officer conveying the information, not on 'whether those relying on the [information] were themselves aware of the specific facts which led their colleagues to seek their assistance.'" *Gonzalez*, 630 F. App'x. at 161 (quoting *United States v. Hensley*, 469 U.S. 221, 231 (1985)).

*United States v. Gardenhire*, Cr. No. 15-87, 2017 WL 1022578, at *4-5 (W.D. Pa. Mar. 16, 2017).

In this Court's estimation, the totality of the circumstances supports a finding that the experienced officer had reasonable suspicion to believe that Walker and Somerville were engaged in criminal activity prior to the officers' directing them to exit the vehicle and

subjecting them to the *Terry* patdown searches.  *See United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009) (quoting *Terry*, 392 U.S. at 19-20, n.16) ("A seizure occurs only 'when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'").  To this end, Officer Patton was patrolling late at night in what he understood was a high crime area where drug trafficking and driving under the influence offenses occur with relative frequency.  *Cf. United States v. Edmonds*, 2013 WL 6002234, at *10 (W.D. Pa. Nov. 12, 2013), *aff'd* 606 F. App'x. 656 (3d Cir. 2015) ("the officers' awareness of prior violent crimes having occurred in the general vicinity is certainly one of the factors which must be considered in the evaluation of all of the evidence").  He personally observed violations of the vehicle code and lawfully pulled over the vehicle Defendants were traveling in to further investigate those violations.  (Docket No. 128 at 6, 52).  Both the driver and passenger were unlicensed and acting suspiciously upon initial questioning by the officers.  *See Brown*, 448 F.3d at 247 ("personal observation of suspicious behavior," may support reasonable suspicion).  Officer Patton also smelled a faint odor of marijuana emanating from the vehicle and observed a baggy corner and rolling papers in plain view from his position outside the vehicle, providing reasonable suspicion of the presence of illegal narcotics within the vehicle and that the occupants of vehicle, Walker and Somerville, were using and/or dealing illegal narcotics.  *See e.g., United States v. Bowra*, Crim. No. 16-161, 2018 WL 1244521, at *19 (W.D. Pa. Mar. 9, 2018) (quoting *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (per curiam)) ("The Supreme Court has explained that '[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.'").

Defendants' challenges to the credibility of such evidence, including the inconsistencies between Officer Patton's testimony and his written report, do not undermine such findings for several reasons. (*See* Docket No. 136; 138). First, the dispute over the timing of when Officer Patton smelled the marijuana is insignificant due to the fact that under both versions of events, he smelled it prior to directing the occupants out of the vehicle and subjecting them to the patdown searches. (Docket No. 128 at 12, 36, 57-59). Second, the dispute over whether Officer Patton observed a single baggy corner or multiple baggy corners does not matter because as an experienced officer he understood that a single baggy corner constitutes drug paraphernalia which can support a finding of reasonable suspicion, particularly when coupled with his observation of additional drug paraphernalia, i.e., the rolling papers, prior to Defendants being directed out of the vehicle. *United States v. Stabile*, 633 F.3d 219, 244 (3d Cir. 2011) (noting that drug paraphernalia is incriminating); *Gardenhire*, 2017 WL 1022578, at *6 (noting that baggy corner constituted drug paraphernalia based on testimony of experienced officer). Further, Defendants have not cited any authority for the proposition that the officer's description of the marijuana smell as "faint" undermines the fact that there is reasonable suspicion of criminal activity on this record. (Docket Nos. 136; 138). As one Court has persuasively held:

> [t]he Court is unaware of any precedential authority requiring that the smell of illegal contraband contain a certain odor level in order to establish probable cause. As indicated above, probable cause exists to search a vehicle once the smell of marijuana is articulable and particularized. Whether faint, strong, or otherwise, "the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." [*United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004)].

*People v. Turnbull*, No. SX-11-CR-832, 2014 WL 3974537, at *5 (V.I. Super. June 23, 2014).

Overall, the Court rules that the *Terry* patdown searches were supported by reasonable suspicion and denies Defendants' motions to suppress the cell phones and cash seized as a result

of same.  In addition, the same facts demonstrate that the officers had reasonable suspicion to extend the duration of the search by approximately 10-15 minutes so that the K9 unit could arrive on scene and conduct its sniff of the vehicle.  *See United States v. Green*, 897 F.3d 173, 181-82 (3d Cir. 2018).

The Court next moves on to the Government's assertion of the automobile exception, which this Court recently addressed in *United States v. Everett*, Crim. No. 16-195, 2017 WL 4269516, at *5 (W.D. Pa. Sept. 26, 2017).

> The United States Court of Appeals for the Third Circuit has recognized the "broad sweep of the automobile exception," pursuant to which a vehicle may be searched without a warrant upon a showing of probable cause that evidence of a crime may be located in the vehicle. *Donahue*, 764 F.3d at 300. As the Court of Appeals explains,
>
> > the automobile exception includes two important elements specific to that exception: First, "[i]f probable cause justifies the search ..., it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." [*United States v. Ross*, 456 U.S. 798, 825 (1982)]. Second, probable cause does not dissipate after the automobile is immobilized because the exception does not include an exigency component. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). As a result, the government can search an impounded vehicle without a warrant even though it has secured the vehicle against the loss of evidence and it has the opportunity to obtain a warrant for the search. *See Michigan v. Thomas*, 458 U.S. 259, 261 (1982); *see also United States v. Johns*, 469 U.S. 478, 486–87 (1985) (extending the rule to closed packages seized from vehicles).
>
> *Donahue*, 764 F.3d 293, 300 (3d Cir. 2014). The probable cause inquiry "is entirely objective," *Halsey v. Pfeiffer*, 750 F.3d 273, 299 (3d Cir. 2014), and is "commonsense," "practical," and "nontechnical;" it is based on the totality of the circumstances and is judged by the standard of "reasonable and prudent men." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983) (internal quotation marks

and citations omitted). The Court evaluates "the events which occurred leading up to the ... search, and then ... [decides] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to ... probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). If there was a "fair probability that contraband or evidence of a crime" would have been found, there was probable cause for the search. *Gates*, 462 U.S. at 238. The Court of Appeals has also held that "[i]t is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (citing *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004); *United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000)).

*Everett*, 2017 WL 4269516, at *5.

Having considered all of the credible evidence in light of such authority, it is this Court's opinion that the search of the vehicle was supported by probable cause. *See id.* In this regard, the Court must consider all of the evidence until the point of the officers' entry into the vehicle, including the facts stated above which the Court has found supported a finding of reasonable suspicion. *See Ornelas*, 517 U.S. at 696. To reiterate, the totality of the circumstances included that: the experienced officer smelled burnt marijuana as he approached the vehicle; he also observed rolling papers and a small baggy corner in plain view in the vehicle; the circumstances were suspicious in that the driver was operating an unregistered vehicle, on a suspended license at 1:30 a.m.; and was in an area near where drug trafficking and other illegal activities were commonplace. *See Green*, 897 F.3d at 186 ("The odor of marijuana in a car can be evidence of the most persuasive character") (quotations omitted). In addition, the patdown searches resulted in the seizure of $1,200 from Somerville and multiple cell phones –which are well known tools of the drug trade – from both Defendants. *See United States v. Gorny*, Crim. No. 13-70, 2014 WL 2860637, at *6 (W.D. Pa. June 23, 2014) ("Cell phones and firearms are generally considered the 'tools of the trade' of drug traffickers") (citations omitted). An exterior sniff of

the vehicle by the K9 police dog resulted in a "hit" for the presence of narcotics. *See Bowra,* *2018 WL 1244521,* at *19 (citing *Illinois v. Caballes,* 543 U.S. 405, 410, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)* ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."); *United States v. Pierce,* 622 F.3d 209, 213 (3d Cir. 2010)* ("It is also well-established that, looking at the totality of the circumstances, a dog's positive alert while sniffing the exterior of the car provides an officer with the probable cause necessary to search the car without a warrant."). All told, after considering the totality of the circumstances, the officers clearly had probable cause to search the vehicle prior to both the K9 and officers entering the vehicle and the Court denies Defendants' motions to suppress the evidence seized from the vehicle, i.e., the heroin, marijuana roaches, baggy corner, and rolling papers. Said motions are also denied to the extent that Defendants seek to suppress the evidence seized from their cell phones under the fruit of the poisonous tree doctrine. *See United States v. Brewer,* 708 F. App'x 96, 100 (3d Cir. 2017)* (quoting *United States v. Coggins,* 986 F.2d 651, 653 (3d Cir. 1993),* *which cited, Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963))* ("The fruit of the poisonous tree doctrine requires the suppression of 'evidence gathered as a result of an unlawful search.'").

Moving on, the Court alternatively holds that the search was authorized under the consent exception as the credible evidence of record demonstrates that Walker and Somerville both consented verbally and in writing to the officers' request that they be permitted to search the vehicle. "Consent is an established exception to the warrant requirement and, while consent must be voluntary, law enforcement is not required to advise a person that he has the right to refuse consent." *United States v. Mosley,* No. 1:17-CR-155, 2018 WL 1792222, at *3 (M.D. Pa.

Apr. 16, 2018) (citing *Schneckloth*, 412 U.S. at 219; *United States v. Drayton*, 536 U.S. 194, 206-07 (2002)).  Here, the totality of the credible evidence of record, including the unrebutted testimony of Officer Patton and the consent form executed by both Defendants, establishes that they each expressly and freely granted consent to the officers to search the vehicle and that they were not handcuffed, threatened or under duress at the time.   (Docket No. 128 at 23-26). Therefore, the Court alternatively denies the suppression motions on this basis.

   *B. Cell Phone Search*

  Somerville also moves to suppress evidence located on cell phones he possessed at the scene which were searched under a warrant issued by the Court of Common Pleas, claiming in conclusory fashion that such search is not supported by probable cause.  (Docket Nos. 71; 136). In response, the Government once again advocates that he has failed to sufficiently allege a violation of his Constitutional rights. (Docket Nos. 79; 133). The Court agrees with the Government's assessment and holds that the warrant is supported by probable cause.

>   A magistrate may find probable cause to search "when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Once the magistrate has made this initial determination, the task of a reviewing court is a "modest" one. *United States v. Conley*, 4 F.3d 1200, 1205 n.2 (3d Cir. 1993). A reviewing court owes the magistrate's probable-cause determination "great deference," and it must leave that determination undisturbed "so long as the magistrate had a substantial basis for" finding probable cause. *See Gates*, 462 U.S. at 236, 103 S.Ct. 2317 (citations and internal quotation marks omitted).

*Brewer*, 708 F. App'x at 99.   In light of this deferential standard, and absent any specific objections lodged to the affidavit in support of the warrant, the facts outlined above that are recounted in the warrant supported the officers' probable cause to search the vehicle and the

additional facts that Somerville had multiple cell phones on his person and cell phones are tools of the drug trade, plainly supported the search warrant here. *See Riley v. California*, 134 S. Ct. 2473, 2493, 189 L. Ed. 2d 430 (2014) (holding that warrant is required to search cell phone seized incident to arrest and noting that "[c]ell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals."); *Gorny*, 2014 WL 2860637, at *6 ("Cell phones and firearms are generally considered the 'tools of the trade' of drug traffickers, which the involved detectives fully understood and conveyed to the magistrate judge."). Finally, the Government has also raised the good faith exception to the warrant requirement which lends further support to denying the suppression motion as to the cell phones as the existence of the warrant justifies the application of the good faith exception under the totality of the circumstances in this case. *See United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir. 2001) ("The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception."). Accordingly, Somerville's motion is denied to the extent that he claims that the search warrant for his cell phones lacked probable cause.

### C. Alleged Miranda Violation

Somerville next claims that certain unidentified statements were taken from him during the traffic stop without being read his *Miranda* rights. (Docket Nos. 71; 136). The Government counters that the alleged statements should not be suppressed because Somerville was not subject to a custodial interrogation at the time he made them. (Docket Nos. 79; 133). Having considered the parties' positions in light of the credible evidence of record, the Court concludes that Somerville's motion must be denied on this issue as well.

The Supreme Court has determined that a suspect must be given specific warnings of his Fifth Amendment rights prior to a "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court further explained "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* The Court later clarified that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Government bears the burden of showing that a statement given prior to *Miranda* warnings is admissible. *United States v. Shaird*, 463 F. App'x. 121, 123 (3d Cir. 2012) (unpublished) (citing *Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)).

Certain questions asked by the authorities do not require *Miranda* warnings. The "public safety" exception permits questions that are necessary to protect either the public or police from eminent danger. *New York v. Quarles*, 467 U.S. 649, 656–57, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); *see also United States v. Pete*, No. 09–CR–82, 2010 WL 887364, at *6, n. 2 (W.D.Pa. Mar.10, 2010) (unpublished) (holding that no Miranda warning was necessary to ask whether defendant was armed after seeing permit to carry a firearm), *aff'd* 463 F. App'x. 113 (3d Cir.2012) (unpublished). "[B]iographical data necessary to complete booking or pretrial services" fall within the "routine booking question" exemption of questions not falling within Miranda's protections. *Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). Furthermore, "[v]olunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478. Thus, if Defendant spontaneously made his statements without being prompted by an interrogation, these statements would be admissible. *See Brown v. Phelps*, No. A–08–596–GMS, 2011 WL 6069072, at *5 (D. Del. Dec.2, 2011) (unpublished) ("Significantly, spontaneous statements that were not made in response to interrogation or its functional equivalent are not barred by Miranda") (citing *Innis*, 446 U.S. at 299–301).

*United States v. Stanton*, Crim. No. 11-57, 2013 WL 228241, at *4-5 (W.D. Pa. Jan. 22, 2013).

Pertinent here, the Supreme Court has also stated that:

we held that the roadside questioning of a motorist who was pulled over in a routine traffic stop did not constitute custodial interrogation. *Id.*, at 423, 441–442, 104 S.Ct. 3138. We acknowledged that "a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers," and that it is generally "a crime either to ignore a policeman's signal to stop one's car or, once having stopped, to drive away without permission." *Id.*, at 436, 104 S.Ct. 3138. "[F]ew motorists," we noted, "would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so." *Ibid.* Nevertheless, we held that a person detained as a result of a traffic stop is not in *Miranda* custody because such detention does not "sufficiently impair [the detained person's] free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." 468 U.S., at 437, 104 S.Ct. 3138. As we later put it, the "temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody," *Shatzer, supra*, at ——, 130 S.Ct., at 1224 (citation omitted). *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Howes v. Fields*, 565 U.S. 499, 509-10 (2012).

In this case, the credible evidence of record demonstrates that Somerville was not subject to a custodial interrogation in that the officers only posed routine booking questions to him at the time he was handcuffed while the officers determined if he had a valid probation warrant or not. Further, after Somerville was released from the handcuffs, he was not in *Miranda* custody. *See Howes*, 565 U.S. at 509. The entirety of the exchange between defense counsel and Officer Patton regarding these points at the suppression hearing follows:

> Q. And whether or not you classify it as detained or arrested, I'm just saying the facts are what I stated?
> A. Yes. [Somerville] was immediately placed in handcuffs.
> Q. So he was not free to go?
> A. Not at that time, no.
> Q. And you were still asking him questions, correct?
> A. Mr. Somerville --
> Q. My question was: You were asking him questions; is that not correct?
> A. We were answering his questions as to why he was being put in handcuffs, and we explained to him that this is why, and he then

told us he does not have a warrant, and we advised that we're going to look into it, but as of right now, we were informed that he has some type of federal probation issue going on, so that was the only conversation.

We didn't ask him anything about drugs, vehicles, nothing. We were trying to figure out what his probation warrant was for, what his probation issue was, such as --

Q. Excuse me. You keep saying probation warrant, and the information that was given to you that night was do not arrest based on this information, which means there was no warrant, as he told you, correct?

A. He was not arrested at that point in time.

Q. I know that's your interpretation.

A. He was detained. It's different. He was being held until we figured this out, until we investigated it.

Q. But I'm saying you put him in handcuffs. He was not free to go, correct?

A. Correct.

Q. You still engaged in a conversation with him on several subjects besides him telling you that there was no detainer.  There was no warrant for him, correct?

A. No.

(Docket No. 128 at 45-46).  Somerville did not introduce any evidence to counter Officer Patton's version of events, which the Court accepts as credibly supported by the record.  (*See* Docket Nos. 128; 136).   Therefore, Somerville's motion to suppress is denied insofar as he claims that statements were taken from him in violation of his Fifth Amendment right to be free from compelled self-incrimination.

V.  CONCLUSION

Based on the foregoing, Defendants' motions to suppress (Docket Nos. [71] and [76]) are denied.  An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: March 22, 2019

cc/ecf: All counsel of record.