IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 17-222 |
| ) | Judge Nora Barry Fischer |
| ) | |
| DAVID ANTHONY SOMERVILLE, and ) | |
| NATEL DEQUE WALKER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

I. INTRODUCTION

This Court issued a Memorandum Opinion on March 22, 2019 denying motions to suppress evidence filed by Defendants David Anthony Somerville and Natel Deque Walker. (Docket No. 139). Shortly thereafter, the Court granted a motion to withdraw filed by Somerville's former counsel and appointed a new lawyer to represent him. (Docket Nos. 145; 146). Presently before the Court are Somerville's motions to reopen the suppression hearing and reconsider the Court's Memorandum Opinion, both of which are opposed by the Government. (Docket Nos. 156; 157; 160). The defense declined to file a reply brief by the deadline established by the Court and the motions are now ripe for disposition. (Docket No. 155). After careful consideration of the parties' positions and for the following reasons, Somerville's motions [156], [157] are denied.

II. MOTION TO REOPEN SUPPRESSION HEARING

As parties are well familiar with the facts of this matter, which are fully set forth in the Memorandum Opinion, the Court turns initially to the legal standard governing motions to reopen. Whether to reopen a proceeding is committed to the sound discretion of the District Court. *United States v. Smith*, 751 F.3d 107, 114 (3d Cir. 2014) (citation omitted). However, "courts should be extremely reluctant to reopen proceedings." *United States v. Kithcart*, 218 F.3d 213, 219-20 (3d

Cir. 2000) (citation omitted); *see also United States v. Trant*, 924 F.3d 83, 88 (3d Cir. 2019) (noting that restraint on reopening in *Kithcart* applies to suppression hearings).

> When determining whether to reopen a proceeding, the paramount factor for a district court to consider is whether reopening, if permitted, would prejudice the party opposing it. *United States v. Kithcart*, 218 F.3d 213, 220 (3d Cir. 2000). Timing is key to this analysis. "If [reopening] comes at a stage in the proceedings where the opposing party will have an opportunity to respond and attempt to rebut the evidence introduced," the possibility of prejudice is greatly lessened. *Coward*, 296 F.3d at 181 (quoting *United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985)). In addition, a party that seeks to reopen a proceeding must provide a reasonable explanation for its failure to initially present the evidence. *Kithcart*, 218 F.3d at 220. In this regard, "[c]onsideration should be given to whether the law on point at the time was unclear or ambiguous." *Coward*, 296 F.3d at 182.

*Smith*, 751 F.3d at 114.

Here, Somerville seeks to reopen the suppression hearing based upon allegations that his counsel was constitutionally ineffective for failing to object to the admission of hearsay evidence during the testimony of Officer Scott Patton at the August 10, 2018 and December 11, 2018 hearings and for failing to utilize certain evidence to cross-examine Officer Patton at the August 10, 2018 hearing. (Docket No. 156). In this Court's estimation, neither argument justifies reopening the suppression hearing for several reasons. First, it is well established that hearsay is admissible at suppression hearings such that defense counsel was not ineffective for failing to object on hearsay grounds. *See e.g.*, *United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.")); *Brosius v. Warden*, 278 F.3d 239, 246 n.4 (3d Cir. 2002) ("Hearsay may be considered in a suppression hearing in a federal court."); *United States v. Britton*, 2016 WL 7380696, at *3 (M.D. Pa. Dec. 20, 2016) (denying § 2255 petition asserting ineffective assistance of counsel due to failure to object to hearsay evidence

at suppression hearing). Second, the evidence presented at the August 10, 2018 hearing concerning the chain-of-custody of the narcotics and the lack of dash camera footage was not specifically referenced in the Court's March 22, 2019 Memorandum Opinion denying the suppression motions and otherwise would not support the suppression of evidence. *See* Docket No. 139; *see also United States v. Jackson*, 363 F. App'x 208, 210 (3d Cir. 2010) (denying request for an evidentiary hearing on suppression motion when defendant merely pointed to discrepancies in police reports and raised questions about the truthfulness of the accounts provided). Therefore, Defendant has failed to meet his burden to demonstrate that the Court should exercise its discretion to reopen the suppression proceedings. *See Smith*, 751 F.3d at 114.

III. MOTION FOR RECONSIDERATION

Next, the purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Kabacinski v. Bostrom Seating, Inc.*, 98 F. App'x 78, 81 (3d Cir. 2004) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)); *United States v. Kalb*, 891 F.3d 455, 467 (3d Cir. 2018). Because "federal courts have a strong interest in the finality of judgments," *United States v. Hoey*, Cr. No. 09-200, 2011 WL 748152, at *2 (W.D. Pa. Feb. 15, 2011) (citation omitted), the standard that must be met to prevail on a motion for reconsideration is high, *see Berry v. Jacobs IMC, LLC*, 99 F. App'x 405, 410 (3d Cir. 2004).

The Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *United States v. Banks*, Crim No. 03-245, 2008 WL 5429620, at *1 (W.D. Pa. Dec. 31, 2008) (citing *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Motions for reconsideration are not a tool to re-litigate and reargue issues

which have already been considered and disposed of by the Court, *see Hoey*, 2011 WL 748152, at *2 (citation omitted), to express disagreement with the Court's rulings, *see United States v. Perminter*, Cr. No. 10-204, 2012 WL 642530, at *7 (W.D. Pa. Feb. 28, 2012), or for addressing arguments that a party should have raised earlier, *see United States v. Dupree*, 617 F.3d 724, 732-33 (3d Cir. 2010) (quotations omitted); *Kalb*, 891 F.3d at 467. Rather, such a motion is appropriate only where the court misunderstood a party or where there has been a significant change in law or facts since the Court originally ruled on that issue. *Hoey*, 2011 WL 748152, at *2. At least at the District Court level, motions for reconsideration should be sparingly granted. *See Cole's Wexford Hotel, Inc. v. UPMC and Highmark, Inc.*, 2017 WL 432947, *2 (W.D. Pa. Feb. 2, 2017).

In support of his motion for reconsideration, Somerville has not cited any changes in the controlling law or the availability of any new evidence. (Docket No. 157). Rather, he submits that the Court erred as a matter of law in that it allegedly applied an incorrect legal standard in evaluating the *Terry* frisk of his person and did not specifically find that the officer had a reasonable belief that he was armed and dangerous. (*Id.*). The Government counters that this argument was never raised by the defense and that the *Terry* frisk of Defendant was justified in any event. (Docket No. 160). Once again, the Court agrees with the Government's assessment.

In this Court's estimation, Somerville's motion must be denied because the record reveals that he did not raise a challenge to the *Terry* frisk in his initial motion or proposed findings of fact and conclusions of law. (*See* Docket No. 71 at 2; 136 at 3-4). He cited none of the caselaw raised by his current counsel and focused on challenging the constitutionality of the traffic stop; the search of vehicle; and inculpatory statements he made to law enforcement. (*Id.*). The Court of Appeals has recognized that:

> even the most learned judges are not clairvoyant. Thus, we do not require district judges to anticipate and join arguments that are never

raised by the parties. Instead courts rely on the litigants not only to cite relevant precedents, but also to frame the issues for decision.

*Dupree*, 617 F.3d at 728 (citations omitted). Thus, Somerville's motion can be denied on this basis alone.

With that said, although the Court was not asked to determine if the officers had reasonable suspicion that Somerville was armed and dangerous prior to conducting the *Terry* frisk or patdown search, the credible evidence presented at the suppression hearing fully supports such a finding. *See United States v. Gaitlin*, 613 F.3d 374, 379 (3d Cir. 2010) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868) ("During a lawful stop, if the officer 'has reason to believe that he is dealing with an armed and dangerous individual,' he may conduct 'a reasonable search for weapons for the protection of the police officer.'"). As the Court noted in its decision regarding the lawfulness of the traffic stop:

> the totality of the circumstances supports a finding that the experienced officer had reasonable suspicion to believe that Walker and Somerville were engaged in criminal activity prior to the officers' directing them to exit the vehicle and subjecting them to the *Terry* patdown searches. *See United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009) (quoting *Terry*, 392 U.S. at 19-20, n.16) ("A seizure occurs only 'when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'"). To this end, Officer Patton was patrolling late at night in what he understood was a high crime area where drug trafficking and driving under the influence offenses occur with relative frequency. *Cf. United States v. Edmonds*, 2013 WL 6002234, at *10 (W.D. Pa. Nov. 12, 2013), *aff'd* 606 F. App'x. 656 (3d Cir. 2015) ("the officers' awareness of prior violent crimes having occurred in the general vicinity is certainly one of the factors which must be considered in the evaluation of all of the evidence"). He personally observed violations of the vehicle code and lawfully pulled over the vehicle Defendants were traveling in to further investigate those violations. (Docket No. 128 at 6, 52). Both the driver and passenger were unlicensed and acting suspiciously upon initial questioning by the officers. *See Brown*, 448 F.3d at 247 ("personal observation of suspicious behavior," may support reasonable suspicion). Officer Patton also smelled a faint odor of marijuana emanating from the

> vehicle and observed a baggy corner and rolling papers in plain view from his position outside the vehicle, providing reasonable suspicion of the presence of illegal narcotics within the vehicle and that the occupants of vehicle, Walker and Somerville, were using and/or dealing illegal narcotics. *See e.g., United States v. Bowra*, Crim. No. 16-161, 2018 WL 1244521, at *19 (W.D. Pa. Mar. 9, 2018) (quoting *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (per curiam)) ("The Supreme Court has explained that '[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.' ").

*United States v. Somerville*, No. CR 17-222, 2019 WL 1316413, at *6 (W.D. Pa. Mar. 22, 2019).

The Court made the following factual findings:

> Sergeant Hamilton spoke to the passenger, Somerville, and the officers were advised by dispatch that he also did not have a valid driver's license and that there was an active warrant for his arrest. (Docket No. 128 at 19, 45). Somerville attempted to explain that he was on federal probation but that he did not have an outstanding arrest warrant. (*Id*. at 19-20). However, he was directed to exit the vehicle, subject to a pat-down search for officer safety, and placed in handcuffs immediately upon receiving information that he was wanted. (*Id*.). The search of Somerville's person resulted in the seizure of $1,200 in cash and three cell phones but no other contraband. (*Id*. at 21, 67).

*Somerville*, 2019 WL 1316413, at *3. Officer Patton also testified credibly that the *Terry* frisk was done for officer safety due to Somerville's prior criminal history involving a federal firearm conviction.

> Q. Why would you choose to detain him at that time based on this information?
> A. At that time, when it came over the air that Mr. Somerville had a warrant or a possible warrant, he was telling us he does not have a warrant, and in some conversation there, he said that it was for a gun charge.
> We said what's the federal probation warrant.
> He said I don't have a warrant. I was on probation for a gun charge.
> At that time, Sergeant Hamilton detained him, being that it was a gun charge, for our safety at that point.

(Docket No. 128 at 19-20).

After considering all of the facts of record, the Court concludes that the totality of the circumstances, including the facts justifying the initial traffic stop, coupled with those learned by the officers concerning the federal probation warrant for Somerville's arrest and his prior criminal history, provided reasonable suspicion for law enforcement to conduct a *Terry* frisk of Somerville's person for officer safety. See *Gaitlin*, 613 F.3d at 379.

The Court alternatively holds that the Government has also demonstrated that the doctrine of inevitable discovery would otherwise save the evidence from exclusion because "the police, following routine procedures, would have inevitably uncovered the evidence." *United States v. Stabile*, 633 F.3d 219, 245 (3d Cir. 2011) (citing *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998)). "Under the Supreme Court's holding in *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), a full search of a person incident to a lawful arrest is a reasonable search under the Fourth Amendment" if it is based on probable cause. See *United States v. Gardner*, Crim. No. 12-217, 2013 WL 5918313, at *13 (W.D. Pa. Nov. 1, 2013). Somerville has not challenged this Court's ruling that the vehicle was lawfully searched based on probable cause under the automobile exception and the results of that search, i.e., the heroin and fentanyl within the vehicle, plainly gave the officers probable cause to arrest him for possession of illegal narcotics. See *United States v. Donahue*, 764 F.3d 293, 299-300 (3d Cir. 2014) ("The automobile exception permits vehicle searches without a warrant if there is 'probable cause to believe that the vehicle contains evidence of a crime.'"). Therefore, the cell phones and cash on Somerville's person would have been inevitably discovered based on a search incident to his arrest. *Gardner*, 2013 WL 5918313, at *13. Accordingly, Somerville's motion for reconsideration is denied for this reason as well.

IV. CONCLUSION

Based on the foregoing, Somerville's motions to reopen [156] and for reconsideration [157] are DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: August 27, 2019

cc/ecf: All counsel of record

David Anthony Somerville c/o Michael E. DeMatt, Esquire