## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    )
                             )
    v.                       )    Criminal No. 17-222
                             )    Judge Nora Barry Fischer
DAVID ANTHONY SOMERVILLE,    )
                             )
    Defendant.               )

## MEMORANDUM OPINION

### I.    INTRODUCTION

Presently before the Court are Defendant David Anthony Somerville's Motion for Release on Bond, the Government's Response in opposition, Somerville's Reply and the Government's Sur-Reply.   (Docket Nos. 271; 275; 277; 281).   The Court also considered Somerville's medical records which were filed under seal and received an update from the U.S. Probation Office concerning his home plan on May 17, 2021.   (Docket No. 284).   Somerville seeks release from custody pending trial in this case, which has been continued multiple times during the COVID-19 pandemic, due to the extraordinary length of time that he has served in presentence custody, his having twice contracted COVID-19 while incarcerated, and the need to prepare his defense for trial.   (Docket Nos. 271; 277).   The Government acknowledges the lengthy period of pretrial detention but maintains that continued detention is warranted given that the evidence it intends to present at trial may support various enhancements under the sentencing guidelines and result in an advisory guidelines range exceeding the time that he has served in presentence custody.   (Docket Nos. 275; 281).   After careful consideration of the parties' positions in light of the relevant standards, and after conferring with the U.S. Probation Office, Somerville's motion [271] is granted.

1

II.     BACKGROUND

Defendants David Anthony Somerville and Natel Deque Walker are charged with one count of conspiracy to distribute heroin and fentanyl, "with persons both known and unknown to the grand jury," in violation of 21 U.S.C. § 846, from September 11, 2015 to on or about January 9, 2016 and one substantive count of possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), on or about January 9, 2016, at Counts One and Two of the Indictment in Criminal No. 17-222.  (Docket No. 44).   Walker pled guilty to the conspiracy charge at Count One and was sentenced on December 16, 2020 to "time served" incarceration, as the Court agreed with the parties' assessment that he was no longer a career offender following the Third Circuit's decision in *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020) and recognized that he had served approximately 40 months in custody which was above the advisory guidelines range of 27 to 33 months' incarceration.  (Docket Nos. 196; 197). Somerville has maintained his not guilty pleas and to this point has insisted on exercising his right to a jury trial.  (*See e.g.*, Docket Nos. 267; 269; 285).   Under the current Administrative Order issued by Chief Judge Mark R. Hornak and the COVID-19 protocols governing jury trials in this District, all jury trials were continued from March 13, 2021 until at least September 30, 2021, but the Court and parties have requested that this case be placed on a trial list for the week of June 28, 2021 such that jury selection and trial may commence at that time.  *See Administrative Order* (updated as of April 27, 2021), 2:20-mc-394 (W.D. Pa. Apr. 27, 2021).

Somerville's detention history is complicated, to say the least.  But, the record before the Court, including the bond reports produced by Pretrial Services and a review of state and federal court dockets, reflects that Somerville has been consistently detained from January 12, 2017 until

the present or a period of 52 and ½ months.[1]  To that end, he was arrested and charged with a number of state offenses on January 12, 2017 at CP-02-CR-0003334-2017 in the Court of Common Pleas of Allegheny County but remained in state custody due to a failure to post bail. Prior to this arrest, he had been charged federally via a criminal complaint on November 21, 2016.  However, he was not brought into federal custody until July 25, 2017 via a writ of habeas corpus ad prosequendum.  A detention hearing was held on July 31, 2017 at which time former Magistrate Judge Robert C. Mitchell: found probable cause to support the charges implicating the rebuttable presumption of detention; noted that Somerville was in state custody on an unrelated drug charge; held that he had no legitimate means of employment and presented a danger to the community and a risk of flight; and ordered that he be held without bail.  (Docket No. 22).  The bond report from that proceeding indicates that Somerville's initial release plan involved living with his mother at her McKees Rocks address but noted that Pretrial Services was unable to contact her to assess the feasibility of his release plan and suitability of her residence.  Somerville neither sought de novo review of the detention order from this Court nor appealed the decision to the Court of Appeals.  (*See generally* Docket Report at Crim. No. 17-222).

The grand jury returned the pending indictment on August 22, 2017.  (Docket No. 44). Several months later, on January 18, 2018, the unrelated state charges at CP-02-CR-0003334-2017 were nolle prossed.   The current information provided by the Probation Office demonstrates that Somerville has no other detainers or pending charges.  As such, it appears that the 52 and ½ months in custody (and counting) that Somerville has served since January 12,

---

[1]       Somerville was also in custody from the date of the offense conduct in this case, January 9, 2016 through November 11, 2016, all of which was credited against a sentence of 12 months and 1 day imposed by the Hon. Donetta W. Ambrose for his supervised release violations at Criminal No. 09-341.  The state charges for the underlying offenses at CP-02-0002841-2017 were nolle prossed on April 18, 2017 after the case was adopted for federal prosecution.

2017 is potentially available to be credited against any sentence imposed in this case if a guilty verdict is rendered or if he changes his plea to guilty.

There have been numerous continuances of trial granted during the pendency of this case, with the time excluded under the Speedy Trial Act, 18 U.S.C. § 3161, et. seq.  While many of the continuances were at the request of Somerville (and his attorneys), some of the delays are also attributable to his codefendant Walker, the Government, and more recently, the Administrative Orders issued by Chief Judge Mark R. Hornak continuing all jury trials due to COVID-19 from March 13, 2020 through September 30, 2021.  To that end, the initial extensions (from the August 30, 2017 arraignment through February 12, 2018 filing of pretrial motions) were granted at the request of Somerville and Walker for purposes of extending the time needed to prepare and file pretrial motions.  (Docket Nos. 50; 51; 54; 55; 56; 57; 62; 63; 64; 65).  However, the next round of extensions was requested by Walker, who was granted an additional 30 days to file his pretrial motions, (from February 12, 2018 to March 13, 2018) and the Government which sought 30 days to provide an omnibus response to the Defendants' motions (from March 13, 2018 to April 12, 2018).  (Docket Nos. 66; 67; 72; 73). The Court set a suppression hearing for May 10, 2018 to accept evidence on the motions but did not go forward at that time because Walker sought additional continuances to obtain substitute counsel and file additional pretrial motions (from May 10, 2018 to July 25, 2018).  (Docket Nos. 84; 87; 88; 92).  Additional delays were caused by the Government's position that the Defendants lacked standing to challenge the vehicle searches, a position which the Court overruled after ordering additional briefing and bifurcating the proceeding into two sessions (August 10, 2018 and December 11, 2018).  (Docket No. 105).

Following the December 11, 2018 hearing, the Court ordered the transcript and supplemental briefing and then issued its decision and orders denying the suppression motions and discovery requests on March 22, 2019.  (Docket Nos. 139; 140; 141).  The subsequent delays between that time and leading up to the original trial date of January 28, 2020 were attributable to Somerville as substitute counsel was appointed to represent him on two separate occasions[2]; additional pretrial motions were filed and resolved by the Court; the seized narcotics evidence was re-weighed by an independent laboratory at his request; and, newly appointed counsel needed sufficient time for trial preparation.  (*See e.g*., Docket Nos. 142; 144; 155; 182; 187; 193; 200).  The events of the final pretrial conference on January 24, 2020 led to another continuance by the defense but the primary reason for that decision was that one of the Government's witnesses was unavailable to testify and Somerville was unwilling to accept a stipulation of her proffered testimony to present to the jury.  (Docket Nos. 219; 220; 226).  The lawyers for both parties also listed conflicts including paid vacations and trials during the subsequent months. (Docket No. 226). As such, the continuance from January 24, 2020 to July 24, 2020 was jointly attributable to both Somerville and the Government.  Finally, our District's continuance of all jury trials due to the COVID-19 pandemic from March 13, 2020 until the present is not attributable to Somerville.

The issue of pretrial detention was revisited in January 2019.  At that time, Somerville moved for release on bond, the Government opposed his motion and the Court issued an order denying same.  (Docket Nos. 130; 132; 134).  Among other things, the Court noted that the Government's initial proffer of the advisory guidelines range was 27-33 months if convicted at

---

[2]    Michael DeMatt, Esq. was appointed to replace Alonzo Burney, Esq. on March 26, 2019 and then Brian Aston, Esq. was appointed to replace DeMatt on November 25, 2019.  Somerville's current counsel, Martin Dietz, Esq. was appointed to replace Aston on September 21, 2020.  (Docket No. 244).  Due to restrictions on in-person visits and court appearances, they have yet to meet in person.

trial but that he may be a career offender subject to a much higher range.    (Docket No. 134). The Court further recognized that Somerville had only been in federal custody for 18 months at that point in time; had a significant criminal history; and had previously violated court conditions, including the violations while on supervised release for his prior federal offense at Criminal No. 09-341. (*Id*.).   Given same, the Court did not find a sufficient basis to order his release and denied his motion for bond.   (*Id*.).

Somerville has been transferred to different facilities several times during his lengthy pretrial detention as he was initially at the Allegheny County Jail ("ACJ"); moved to the Northeast Ohio Correctional Center ("NEOCC"); transferred to the Indiana County Jail; and then returned to the ACJ on April 19, 2019, where he is currently housed and has been throughout the COVID-19 pandemic.   (Docket No. 284).   The ACJ's COVID-19 protocols which were put in place on March 13, 2020 and are designed to protect inmates from the virus have resulted in harsher conditions of incarceration, including, but not limited to, frequent lockdowns; substantial restrictions on inmate movements; less recreation time; fewer jobs; cancellation or postponement of substance abuse, reentry, vocational, educational and other programming; substantial delays in health care services; and precluded in-person visits with relatives and friends.   Inmates potentially exposed to or infected with COVID-19 have been subject to testing and quarantines. Attorney visits have also been restricted in that inmates are limited to meeting with their counsel in a non-contact setting, in designated visiting booths separated by glass partitions or via telephone or videoconference meetings.   *See Allegheny County, Attorney Visits, available at:* https://www.alleghenycounty.us/jail/attorney-visits.aspx (last visited 6/1/21).

As to Somerville's mental and emotional health, the information provided to the Court during prior proceedings and his jail records indicate that he is 33 years old and has been

diagnosed with: post-traumatic stress disorder; insomnia; major depressive disorder; anxiety; and bipolar disorder and is presently being treated with several medications. (Docket No. 284). The jail records demonstrate that he has had some issues with medication compliance and his behavior while incarcerated but the more recent records show that he has been generally compliant with his mental health regimen. (*Id.*). At the same time, the more recent records reveal numerous times where his medications have been continued without a corresponding mental health assessment, counseling or therapy session due to the ACJ's COVID-19 protocols. (*Id.*). Somerville has also filed numerous grievances at the jail and at least one lawsuit, *Somerville v. Finney, et al.*, Civ. A. No. 2:20-cv-1223-MPK, which remains pending.

With respect to his physical health, the records show that he is 6 foot, 4 inches tall and weighs 235 pounds. (Docket No. 284). He has been diagnosed with hypertension for which he has moderate treatment and asthma for which he is prescribed an albuterol inhaler. (*Id.*). He has reported experiencing migraine headaches, lower back pain and dental issues. (*Id.*). He was prescribed over the counter medication (acetaminophen and ibuprofen) for pain. (*Id.*). He has had some physical therapy for this lower back issues; was provided with a plastic chair for his cell; and was prescribed a cane to assist in ambulation for a period of time. (*Id.*). It appears that the dental issue was resolved with a tooth extraction. (*Id.*).

Most relevant here, Somerville has twice tested positive for COVID-19 while in custody at the ACJ. (Docket No. 284). He initially tested positive for COVID-19 on April 26, 2020 near the outset of the pandemic. (*Id.*). He was placed in isolation/quarantine for 16 days, returning to the general population on May 11, 2020. (*Id.*). Somerville was reportedly asymptomatic from a physical health standpoint, but the records reveal that the episode and resulting segregation caused him mental stress and anxiety. (*Id.*).

Months later, on February 23, 2021, Somerville tested negative for COVID-19. (Docket No. 284). However, he was swabbed again on March 1, 2021 and tested positive for COVID-19 a second time. (*Id.*). He was once again placed in isolation/quarantine. (*Id.*). During this time, he exhibited multiple symptoms, including experiencing chills; hot and cold spells; headaches; a runny nose; loss of taste and smell; and diarrhea. (*Id.*). He was prescribed acetaminophen and loperamide and encouraged to drink more fluids. (*Id.*). He denied having a cough and was not treated for respiratory complications. (*Id.*). Although Somerville's physical symptoms subsided and he was cleared from quarantine on March 13, 2021, he reported increased anxiety and stress from his second experience with COVID-19. (*Id.*). He further complained about what he believed were multiple mistakes made by the ACJ staff in how the quarantine was conducted that left him exposed to COVID-19 and the negative impact that the ACJ's COVID-19 protocols and lockdown has had on his overall mental health throughout the past year. (*Id.*).

The ACJ reports that as of May 31, 2021, there were zero inmates currently in the facility with a positive COVID-19 diagnosis. *See Allegheny County Jail, COVID-19 Information, available at:* https://www.alleghenycounty.us/jail/index.aspx (last visited 6/1/21). The ACJ further advises that there have been 346 positive inmates during the pandemic and that 4 inmates tested positive during April of 2021, all of whom have recovered. *Id*. The statistics also state that 448 incarcerated individuals have received the Janssen/Johnson & Johnson vaccine and that the current population is 1,765 incarcerated individuals reflecting that approximately twenty-five percent (25%) of the total inmate population has been vaccinated. *Id*. There is no evidence in the record that Somerville has been vaccinated.[3]

---

[3]     The ACJ further reports that 355 employees have received their first dose of COVID-19 vaccine and 330 employees have been fully vaccinated. The latest joint status report filed in *Graham v. Allegheny County et al.*, Civ. A. No. 20-496, Docket No. 121 (W.D. Pa. Apr. 21, 2021), states that there are 730 employees at the jail and 50.6% of them have received at least one dose of COVID-19 vaccine.

Following the briefing on this motion and the review of the medical records, the Probation Office reviewed Sommerville's original release plan to live with his mother at her McKees Rocks residence and has confirmed the viability of this plan. The Probation Office is also able to provide Somerville with needed mental and emotional health services while released on bond and to monitor his movements and compliance if conditions of home confinement and electronic monitoring are imposed.

As all briefing has concluded and the Probation Office has completed its review of Somerville's home plan, the Court considers this motion to be fully briefed and ripe for disposition.

III.    DISCUSSION

At the outset, the Court must address the parties' disputes regarding the prevailing legal standards. (Docket Nos. 271; 275; 277; 281). Somerville generally seeks release on bond to prepare for his upcoming trial date given the significant time he has served in presentence custody; his contraction of COVID-19 on two occasions while in custody at the ACJ; and the difficulty in preparing for trial given COVID-19 protocols at the jail. (Docket Nos. 271; 277). The Government counters that Somerville has failed to demonstrate that the detention proceedings should be reopened pursuant to 18 U.S.C. § 3142(f) as he has allegedly not presented material evidence sufficient to warrant revisiting the prior detention ruling. (Docket Nos. 275; 281). The Government asks that the Court dismiss his current motion akin to the Court's January 2019 order denying his prior motion for bond. (*Id*.). Within this context, the parties further debate the amount of time Somerville has served in presentence custody in relation to their respective estimations of the advisory guidelines range upon a conviction of one or both charges. (Docket Nos. 271; 275; 277; 281). Having carefully considered the parties'

positions, the Court finds that Somerville's motion seeking release on bond implicates several related legal principles but that it is most appropriately analyzed under 18 U.S.C. § 3142(i) governing temporary release.

Section 3142(i) provides that:

> [t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(j).  This section authorizing temporary release "provides a 'limited safety valve' […] enabling courts to re-examine detention decisions" when necessary for preparation of a defense or another compelling reason.  *United States v. Gilbert*, --- F. Supp. 3d ----, 2021 WL 63267, at *5 (E.D. Pa. Jan. 7, 2021) (quoting *United States v. Washington-Gregg*, Crim. No. 19-331, 2020 WL 1974880, at *5 (M.D. Pa. Apr. 24, 2020)).  The defendant bears the burden to establish that his temporary release is warranted under § 3142(i). *United States v. Murrietta*, No. CR 20-218, 2021 WL 1088562, at *2 (W.D. Pa. Mar. 22, 2021) (citing *United States v. Wilburn*, No. 2:18-CR-115, 2020 WL 1899146, at *2 (W.D. Pa. Apr. 17, 2020) (further citations omitted)).  "To meet this burden, the defendant must present an individualized argument why temporary release is appropriate, as generalized or speculative arguments are insufficient." *Id.*  In the context of the COVID-19 pandemic, courts have found that:

> [u]nder the "compelling reason" section, the defendant bears the burden of establishing that release is proper: factors to consider include (1) the original reason for pretrial detention, (2) the specificity of the defendant's COVID-19 risks, (3) the extent to which release would mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendants proposed release would increase COVID-19 risks to others.

*United States v. Selvage*, No. 3:20-CR-13-SLH-1, 2020 WL 7239923, at *2 (W.D. Pa. Dec. 9, 2020) (citing *United States v. Brown*, 2020 WL 7042615, at *4 (D. Kan. Dec. 1, 2020)).  The Court must also consider the danger to the safety of the community and his risk of flight in light of any proposed conditions of release.  *See Wilburn*, 2020 WL 1899146, at *6-7.

In this Court's estimation, Somerville has met his burden to demonstrate that he should be temporarily released from custody pending trial of this matter and that he shall be placed on conditions including: home detention, with electronic monitoring; a mental and emotional health assessment and continued services, as appropriate; and that his mother be made a third-party custodian. *See Selvage*, 2020 WL 7239923, at *2. Specifically, an individualized assessment of the totality of the facts and circumstances of this case show that Somerville's release to prepare for his upcoming trial (whether it takes place on June 28, 2021 or sometime in the future) is necessary to ensure that he and his appointed counsel can sufficiently prepare for trial.  *Id.*  The Court analyzes each of the relevant factors, in turn.

First, the Court holds that the original reasons for pretrial detention ordered by former Magistrate Judge Mitchell on July 31, 2017 do not appear to require Somerville's continued pretrial detention as his trial approaches.  To that end, Judge Mitchell concluded that pretrial detention was warranted because Somerville's release presented a danger to the community and that he was a flight risk, citing the applicable presumption of detention given the narcotics offenses at issue in this case; the fact that he was being held at that time on pending charges in the Court of Common Pleas; his prior criminal history and violations of court conditions including the terms of his federal supervised release; and, that his home plan had not been approved by the Probation Office.  (Docket No. 22)  However, at this stage of the proceedings, all state charges have been nolle prossed such that Somerville is not subject to any other pending

charges or detainers. The Probation Office has also approved his home plan, recommending his release on strict conditions.

With respect to the presumption of detention and dangerousness to the community, certainly the alleged trafficking of heroin and fentanyl present a danger to the community, as this Court has repeatedly held. *See United States v. Williams*, Cr. No. 18-335, 2020 WL 4934659, at *7 (W.D. Pa. Aug. 24, 2020) ("As this Court has repeatedly observed, drug trafficking poses a substantial risk of harm to the community.").  Yet, Somerville has been in custody for 52 and ½ months awaiting trial and the Court of Appeals has recognized that subjecting a defendant to a lengthy period of pretrial detention may raise due process concerns.  *See United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986).  "[A]t some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142." *Id.*  In this regard, "due process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits." *Id.*  Courts should also consider "such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity." *Id.*

Although several of these factors have been addressed, the Court notes that the Government's case on the merits appears to be strong based on the evidence presented during pretrial proceedings including narcotics seized from the vehicle Somerville was riding in with his codefendant, Walker, the text messages recovered from the seized cellular phones, and other information from law enforcement witnesses.  (*See* Docket Nos. 139 (denying motion to

12

suppress); 164 (denying motion to reopen); 210 (denying motion in limine)).   However, the Government's sentencing arguments have shifted considerably during these proceedings starting with its initial proffer of 27-33 months' incarceration[4] and moving on to its current proffers that the range may be 51-63 months or it could "balloon" to 130-162 months' incarceration based on the prosecutor's interpretation that the text message evidence shows a significantly increased drug quantity and that Somerville played a leadership role in a broader conspiracy, prospects that presently appear to be speculative, at best.   *See United States v. Kubini*, 2017 WL 2573872, at *19 (W.D. Pa. Jun. 14, 2017) (citing *United States v. Berry*, 553 F.3d 273, 281 (3d Cir. 2009)) (defendant's sentence may not be enhanced based on "unsupported speculation"); U.S.S.G. § 3B1.1(a)-(c), n.1 (3-level and 4-level enhancements require proof that defendant was organizer/leader or manager/supervisor of criminal activity that involved five or more participants, which is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted").   Regardless of the ultimate computation of the advisory guidelines range, the Court has broad discretion to consider each of the § 3553(a) factors in determining an appropriate sentence at or below the range including, among other things: the advisory guidelines range of 27-33 months computed for the codefendant, Walker; Somerville's mental and emotional health conditions; the harshness of his pretrial detention during the COVID-19 pandemic (from March 13, 2020 to the present) including being subject to testing, quarantines, lockdowns and limited access to programming and counseling/treatment; and, the impact that his contraction of COVID-19 twice while in custody has had on both his physical and mental health.   As such, it appears that Somerville will have at least a plausible

---

[4]        The Court notes that the Government has abandoned its prior position that Somerville may be designated as a career offender.  (*Compare*, Docket No. 132 with Docket Nos. 275; 281).

argument that a sentence of time served is "sufficient, but not greater than necessary" to meet all of the goals of sentencing in his case.   18 U.S.C. § 3553(a).

Further, the COVID-19 protocols imposed by the ACJ are such that Somerville and his counsel are not able to meet, in person, to prepare for trial and will likely meet for the first-time during jury selection if he remains detained.   When all of these circumstances are coupled with the fact that significant portions of the 52 and ½ months of delays in this case were attributable to others, including Walker, the Government and the Court's Administrative Orders continuing all trials due to COVID-19, Somerville has set forth compelling reasons for his pretrial release for the purpose of trial preparation and the potential risks of danger to the community and flight will be mitigated by the strict conditions recommended by the Probation Office.  *See Wilburn*, 2020 WL 1899146, at *2.

The remaining factors considering COVID-19 risks to Somerville and others can all be addressed together.   As the Court has already mentioned, despite the Government's position that "the risk of reinfection is miniscule," (Docket No. 275), Somerville contracted COVID-19 twice during his time in custody at the ACJ.  (Docket No. 284).  While he was asymptomatic during his first COVID-19 infection and experienced moderate symptoms from his second COVID-19 infection and avoided severe physical health symptoms, he was subject to segregation and quarantine for the safety of others at the jail on multiple occasions and the same has had a negative impact on his overall mental health.  (Docket No. 284).  Somerville's medical records reveal that mental health assessments and counseling sessions for his disorders (post-traumatic stress disorder; insomnia; major depressive disorder; anxiety; and bipolar disorder) were often avoided due to COVID-19 protocols.  (*Id.*).  A trial is a stressful event for a criminal defendant and as the time for same approaches, the Court believes that it is important for his mental and

emotional health for counseling and treatment to continue, as recommended by his treating physicians and other medical professionals.  If he is released on bond, he can be provided with such services through the Probation Office.

In addition, the Court feels that the risk of COVID-19 infection of other trial participants, including jurors, witnesses, counsel, court staff, and USMS personnel may be lessened if Somerville is  placed in the custody of his mother, who lives alone, and put on home detention and electronic monitoring as such arrangements should limit his exposure to other individuals who may be infected with COVID-19 in the community, where a higher percentage of the population has been vaccinated than those individuals he is in contact with at the prison.  To that end, the statistics reflect that seventy-five (75%) percent of inmates and fifty (50%) percent of staff at the ACJ have not yet been vaccinated and daily transports of Somerville to and from the ACJ during trial would increase the COVID-19 risk to other participants.  The risk that trial would be interrupted by the need for Somerville to once again be quarantined would also be lessened if he is released from a custodial setting where social distancing is difficult and COVID-19 has spread in the past to a residence he will share with one other person.

All told, the Court concludes that an individualized assessment of the unique facts of Somerville's case establish compelling reasons for his temporary release under § 3142(i).  *See* *Gilbert*, 2021 WL 63267, at *5.  To reiterate, Somerville has served 52 and ½ months in pretrial detention to this point, with substantial portions of the delays being caused by others and the COVID-19 pandemic; has been diagnosed with two separate COVID-19 infections while at the ACJ; has significant mental and emotional health issues requiring counseling and treatment that have been exacerbated by his infections and the ACJ's COVID-19 protocols; and, has the practical need to meet with his lawyer to prepare a defense for his upcoming trial.

IV.    CONCLUSION

Based on the foregoing, Somerville's Motion [271] is GRANTED.  An appropriate Order setting conditions of release follows.

_s/Nora Barry Fischer_
Nora Barry Fischer
Senior U.S. District Judge

Dated: June 1, 2021

cc/ecf: All counsel of record

David Anthony Somerville c/o Martin Dietz, Esq.

U.S. Probation Office

U.S. Marshal Service

16